**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES ex rel. ANTONIO RICO, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) No. 04 C 5081 ) |
| WARDEN CHARLES HINSLEY, | ) Judge Rebecca R. Pallmeyer ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Antonio Rico suspected his friend Carlos Garcia of having an affair with Rico's live-in girlfriend Ana Navarro. On June 5, 1995, Rico took Garcia to Slocum Lake on the pretense of a fishing trip and shot him once in the chest and once in the head. Following a jury trial in the Circuit Court of Lake County, Petitioner was convicted of first degree murder on January 26, 1996 and sentenced to 80 years in prison. The Illinois Appellate Court affirmed Petitioner's conviction and sentence, and the Illinois Supreme Court denied his petition for leave to appeal. Petitioner then sought post-conviction relief pursuant to the Illinois Post-Conviction Hearing Act ("IPCHA"), 725 ILCS 5/122-1 *et seq.*, but was unsuccessful.

Now incarcerated at the Menard Correctional Center, Petitioner brings this petition for habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner argues that he was denied his Sixth Amendment right to a fair trial and/or to effective assistance of counsel because his trial counsel did not speak Spanish, did not procure an effective interpreter, and failed to investigate his defense and call witnesses that would have changed the verdict; and because his appellate counsel failed to raise these ineffective assistance claims against his trial counsel. Petitioner further contends that he was denied his Fourteenth Amendment rights to due process and equal protection under the law because he did not understand English and thus was unable to comprehend the trial and appellate proceedings; and because the trial judge improperly imposed an extended sentence without a jury

finding that the murder was brutal and heinous beyond a reasonable doubt.

For the following reasons, the petition for habeas corpus is denied.

## **PROCEDURAL HISTORY**

On direct appeal of his conviction and sentence, Petitioner, represented by counsel, contended that (1) the prosecutor committed reversible error by telling the jury during closing arguments that the State sought only a first-degree murder conviction, and was uninterested in obtaining a conviction for manslaughter; (2) trial counsel was ineffective in waiving the polling of the jury following the guilty verdict; (3) the State erroneously introduced evidence of other crimes by eliciting testimony from Petitioner that he was married to another woman while living with Ana Navarro; (4) the trial court reviewed more than the statutorily allowed number of victim impact statements, and considered hearsay testimony in sentencing; and (5) the trial court abused its discretion in imposing the 80-year sentence. The Illinois Appellate Court found these claims without merit and affirmed the conviction and sentence on October 9, 1997. (*People v. Rico*, No. 2-96-0268 (unpublished order), Ex. A to Respondent's Answer ("Answer").) Proceeding *pro se*, Petitioner filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, raising the same five claims he raised on direct appeal. (PLA, Ex. B to Answer.) The PLA was denied on December 2, 1998. (*People v. Rico*, No. 86324, Ex. C to Answer.)

On February 1, 1999, Petitioner filed a *pro se* petition for post-conviction relief pursuant to the IPCHA. In this petition, he argued that his rights to due process and a fair trial were violated when the trial court (1) did not allow him to cross-examine certain witnesses; (2) refused to admit two exhibits consisting of "love letters" from Ana Navarro while Petitioner was in jail; and (3) admitted gruesome, post-autopsy photographs. He also argued that (4) he was denied effective assistance of appellate counsel because these issues were not raised on direct appeal. (Petition for Post-Conviction Relief, Ex. D to Answer, at 15-16.) The trial court appointed counsel, Patrick J.

Quilty,[1] who on November 21, 2000 filed an "Amended Petition for Post-Conviction Relief" that raised the same four claims, and added a fifth claim that Petitioner's trial counsel was ineffective for failing to call witnesses who would have testified that Petitioner asked them to go with him on the fishing trip because Petitioner believed that Garcia might attack him. (Amended Petition for Post-Conviction Relief, Ex. E to Answer.) At a hearing on the post-conviction petition, Petitioner orally raised another claim that trial counsel was ineffective, for failing to have an expert witness testify concerning the location of wounds on the victim. (Order of March 5, 2001, Ex. F to Answer, at 3.)

The court dismissed the amended petition on March 5, 2001, concluding that Petitioner's claims were without merit and "raised no issues of Constitutional dimension." (*Id.* at 4.) With respect to Petitioner's claims that trial counsel was ineffective for failing to call witnesses, the court noted that counsel had filed a list of witnesses before trial, six of whom were issued subpoenas, and which included an expert witness; trial counsel had also cross-examined the State's pathologist concerning the location of wounds on the victim's body. (*Id.* at 3.) The court concluded that trial counsel's alleged failure to call the witnesses identified by Petitioner was a matter of trial strategy that did not rise to the level of ineffectiveness. (*Id.*)

Petitioner then filed a *pro se* motion in trial court, contending that Quilty was incompetent for failing to include a claim based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) in the amended post-conviction petition. Quilty responded by filing an "Addendum" to Petitioner's post-conviction petition, arguing that Petitioner's 80-year sentence, imposed beyond the 60-year statutory maximum, violated *Apprendi* because the aggravating factor—the brutal and heinous nature of the

---

[1] Included with Petitioner's *pro se* petition for post-conviction relief was an Affidavit from a law clerk at the Menard Correctional Center, stating that he had prepared the petition but that he had been unable to communicate effectively with Petitioner because he did not speak Spanish, and that Petitioner was "in dire need of the appointment of counsel." (Askew Aff., Ex. D to Answer.) Although Respondent asserts in its Answer that the court appointed Quilty on May 17, 2000, the record does not confirm the date.

3

crime—was determined by the judge rather than the jury. (Addendum to Previously Filed Amended Post-Conviction Petition for Relief, Ex. G to Answer.) The court denied the claim raised in the "Addendum" on August 23, 2002, concluding that *Apprendi* did not apply retroactively. (Order of Aug. 23, 2002, Ex. H to Answer.) Petitioner appealed the trial court's dismissal of his post-conviction petition, but on appeal contended only that the court had erred in finding *Apprendi* inapplicable.[2] (*People v. Rico*, No. 2-02-0820 (unpublished order), Ex. I to Answer.) The Illinois Appellate Court affirmed that decision on December 19, 2003, noting that the Illinois Supreme Court had determined in *People v. De La Paz*, 204 Ill. 2d 426, 791 N.E.2d 489 (2003) that *Apprendi* did not apply retroactively to cases in which direct review had concluded before that decision was handed down. (*Id.*)

Petitioner next filed a *pro se* PLA with the Illinois Supreme Court. This petition again raised the *Apprendi* claim, and further reasserted the claim, asserted in the post-conviction petition but not on appeal from the trial court's dismissal of that petition, that appellate counsel had been ineffective for failing to raise, on direct appeal, the other issues addressed by that petition. Petitioner also asserted several other claims for the first time. Specifically, he argued that (1) he had been denied his right to a fair trial and effective assistance of counsel because his attorney did not speak Spanish, and he "was given a 10 year old girl as an interpreter"; (2) he received ineffective assistance of appellate counsel in that counsel failed to raise these language issues on direct appeal; (3) both trial and appellate counsel failed to adequately argue that the physical evidence did not support the prosecution's theory of the case; and (4) the evidence supported a verdict of manslaughter rather than first degree murder. (PLA, Ex. J to Answer.) The Illinois Supreme Court denied this PLA on March 24, 2004. (*People v. Rico*, No. 97749, Ex. K to Answer.)

Petitioner, proceeding *pro se*, filed the instant petition for a writ of habeas corpus on

---

[2] The record does not reveal whether Petitioner was represented by counsel in this appeal.

August 2, 2004. The petition asserts five claims. The first alleges that Petitioner was denied his Sixth Amendment rights to a fair trial and/or to effective assistance of counsel because his trial attorney did not speak Spanish, and because, according to Petitioner, there was a "ten year old girl as interpretor [sic] at trial." Petitioner maintains that "[d]ue to the nature of the case of sexual infidelity and fight with lover over common law wife [he] was unable to relate these facts in defense to a ten year old girl to explain."[3] (Petition for Writ of Habeas Corpus ("Petition"), at 5.) Petitioner does not identify, in his habeas petition, any specific facts regarding sexual infidelity that he had refrained from disclosing; nor does he explain how any such facts would have supported a defense to a murder charge. The court notes that in the PLA from his post-conviction petition, Petitioner elaborated somewhat: he asserted that "[d]ue to his Catholic religious beliefs he was unable to relate and discuss the sexual nature of his common law wife's infidelities that lead [sic] to the crime he was charged with[,]"[4] (PLA, Ex. J to Answer, at 4), and argued generally that the killing of Garcia was a "crime of passion" that should have resulted in a "lesser verdict of intentional manslaughter." (*Id.* at 9.)

Second, Petitioner contends that trial counsel was ineffective because his attorney failed to "investigate defense and call witnesses in defense that would have changed the verdict." (*Id.*) Petitioner does not identify these witnesses in his habeas petition, nor does he elaborate as to how

---

[3] Petitioner does not specify whether the "ten year old girl" interpreted the court proceedings for Petitioner, or whether she translated communications between Petitioner and his attorney, either before or during the trial. The record before this court does not identify the interpreters at Petitioner's trial, or their ages. In the order dismissing Petitioner's petition for post-conviction relief, the trial court noted that "one interpreter was used for the defendant and a separate interpreter for the Spanish speaking witnesses," but did not identify those interpreters. (Order of March 5, 2001, Ex. F to Answer.) Because the court concludes that Petitioner's claims relating to language issues are procedurally defaulted, the court need not inquire further.

[4] Somewhat inconsistently with his claim that he had been unable to raise facts relating to Ana Navarro's alleged infidelity, Petitioner also noted in the PLA that she had testified regarding condoms found on the couple's porch; according to Petitioner, this testimony showed that Navarro was having an affair with the victim, Garcia. (PLA, Ex. J to Answer, at 5.)

they would have testified.  The third claim alleges ineffective assistance of appellate counsel for failing to raise, on direct appeal, the issues presented by the first two claims.  (*Id.*)  Fourth, Petitioner claims that he was denied his Fourteenth Amendment rights to due process and equal protection under the law because both the trial court and the appellate court were aware that he did not speak or write English, yet denied him a Spanish-speaking attorney; thus, Petitioner maintains, he "was alienated from understanding the proceedings and raising the points and issues needed to have an effective appeal."  (*Id.* at 5.)  In his fifth claim—his *Apprendi* claim—he argues that because the jury did not find beyond a reasonable doubt that the murder was brutal and heinous, the judge relied on unsubstantiated facts in imposing a sentence beyond the statutory maximum.  (*Id.*)

## DISCUSSION

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act entitles a prisoner to a writ of habeas corpus if he is being held in prison pursuant to a state court judgment obtained in violation of the Constitution.  28 U.S.C. § 2254; *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  With respect to any claim that was adjudicated on the merits in state court proceedings, a federal court will not grant a writ of habeas corpus unless that state decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1) & (2).  Before seeking habeas relief in federal court, however, a petitioner must first exhaust his state remedies by presenting his claims fully and fairly to the state courts.  28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

In *Boerckel*, the Supreme Court explained that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state

courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. at 845. "[O]ne complete round" means that the petitioner must assert his federal claim, either on direct appeal or in post-conviction proceedings, at "each and every level" of the appellate process, including levels where review is discretionary rather than mandatory. *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) (citing *Boerckel*, 526 U.S. at 845). In Illinois, therefore, "one complete round" includes a petition for discretionary review by the Illinois Supreme Court. *See Boerckel*, 526 U.S. at 847-48.

It is not sufficient, however, for the petitioner merely to have been through a full round of state court appeals; rather, the petitioner must "present the state courts with the same claim he urges upon the federal courts." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971) (citations omitted)). To have presented the "same claim" in state court, the petitioner "must alert the state court that he is relying on a provision of the federal constitution for relief." *Id.* at 513-14 (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam)). The petitioner must have "articulate[d] both the operative facts and the controlling legal principles on which his claim is based." *Id.* at 519.

If a federal habeas petitioner has failed to properly present his federal claim to the state courts, but there is no longer any state corrective process available to him, the petitioner has procedurally defaulted that claim. *Id.* at 514. A procedural default occurs either when (1) the petitioner presented his claim to the state courts, which ruled against the petitioner on adequate and independent state-law procedural grounds; or (2) the petitioner failed to present the claim to the state courts, and "it is clear that those courts would now hold the claim procedurally barred." *Id.*; *see Coleman v. Thompson*, 501 U.S. 722, 735 & n.1 (1991). The petitioner's procedural default will bar a federal court from granting habeas relief on the defaulted claim unless the petitioner demonstrates both cause for and prejudice resulting from that default, *Lewis*, 390 F.3d at 1026 (citing *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977)), or can establish that denial of relief will

result in a miscarriage of justice. *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)). To establish cause, the petitioner must show that "some type of external impediment" prevented him from properly presenting his federal claim to the state courts. *Id.* (citing *Murray*, 477 U.S. at 488, 492). To show prejudice, the petitioner must demonstrate that "the violation of the petitioner's federal rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). A "miscarriage of justice" entails a showing that the petitioner is "actually innocent of the offense for which he was convicted." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).

Respondent contends that except for the *Apprendi* claim, Petitioner's claims are procedurally defaulted because he failed to present those claims to the Illinois courts at each level of the appellate process. Petitioner concedes that those claims were not fully and fairly presented to the Illinois courts, but argues that he has avoided procedural default because he may yet present the claims in a successive petition for post-conviction relief with the Illinois courts. (Petitioner's Reply to Respondent's Answer ("Reply"), at 2.) He states his intention to file such a petition, asks the court to appoint him a Spanish-speaking attorney to assist him in doing so, and urges the court to hold his federal habeas petition in abeyance pending resolution of that petition. (*Id.* at 2-3.) As an apparent alternative argument, Petitioner contends that ineffective assistance of counsel constitutes cause for any procedural default, and asks the court to hold his habeas petition in abeyance while he presents that claim to the state courts as well. (*Id.* at 3.)

With respect to the *Apprendi* claim, Respondent maintains that the claim is not reviewable under the non-retroactivity doctrine set forth in *Teague v. Lane*, 489 U.S. 288 (1989). Petitioner does not address Respondent's *Teague* challenge in his reply. The court addresses, first, those claims that Respondent contends are procedurally defaulted, and then turns to the *Apprendi* claim.

**I.     Procedural Default**

   **A.     Plaintiff Has Failed to Exhaust the Non-*Apprendi* Claims**

As Petitioner appears to acknowledge, his first four claims are unexhausted: he did not present those claims to the Illinois courts through "one complete round" of the appellate process. *See Boerckel*, 526 U.S. at 845. Petitioner raised his first claim—that he was denied his right to a fair trial because his trial attorney did not speak Spanish, and because he had a "ten year old girl" as an interpreter—for the first time in his PLA to the Illinois Supreme Court, seeking review of the dismissal of his petition for post-conviction relief. A claim is not "fairly presented" for federal habeas purposes if raised for the first time in state court only in a petition for discretionary review. *Alvarez v. McGinnis*, 4 F.3d 531, 534-35 (7th Cir. 1993) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). His second claim, alleging ineffective assistance of counsel for failing to "investigate defense" and call (unidentified) witnesses, was included in the "Amended Petition for Post-Conviction Relief": Petitioner claimed that counsel should have presented witnesses who would have testified that Petitioner asked them to go with him on the "fishing trip" that resulted in Garcia's death, because Petitioner believed Garcia might attack him. Petitioner abandoned that claim when appealing the dismissal of that petition, however, as he presented only his *Apprendi* claim to the Illinois Appellate Court, and further did not include the claim in his PLA.

Petitioner's third claim alleges that his appellate counsel was ineffective for failing to raise, on direct appeal, the issues raised by his first two claims. Petitioner did assert a claim of ineffective appellate counsel in both his petition for post-conviction relief and his subsequent PLA to the Illinois Supreme Court; he did not assert that claim in his appeal to the Illinois Appellate Court, however. He thus failed to raise the claim at "each and every level" of the appellate process. *See Lewis*, 390 F.3d at 1025. Moreover, the claim of ineffective appellate counsel that Petitioner presented in his post-conviction petition differs from the claim he presents here: the post-conviction petition alleged that counsel was ineffective for failing to raise, on direct appeal, his claims that the trial court had

denied his due process rights by restricting cross-examination of certain witnesses and by refusing to admit the "love letters" from Navarro as exhibits; but Petitioner alleged for the first time in the PLA, and now alleges in his habeas petition, that appellate counsel should have raised the issues of the non-Spanish-speaking trial counsel and the young interpreter. Petitioner thus did not present the "operative facts" of his claim of ineffective appellate counsel to the Illinois courts until his PLA, *see Perruquet*, 390 F.3d at 519, which is insufficient to preserve his claim for habeas review, *see Castille*, 489 U.S. at 351.

Petitioner's fourth claim, which alleges that he was denied his due process and equal protection rights because the trial and appellate courts both denied him a Spanish-speaking attorney, is raised for the first time in his federal habeas petition. As noted, he has previously alleged that he was denied a fair trial because his attorney did not speak Spanish; to the extent that claim can be recast as a due process or equal protection claim, the claim was raised for the first time in his PLA to the Illinois Supreme Court, as explained above. Petitioner therefore never presented the claim fully and fairly to the Illinois courts.[5]

### B. The Unexhausted Claims Are Procedurally Defaulted

Petitioner concedes that he failed to exhaust the above four claims in the Illinois courts, but nevertheless denies that the claims are procedurally defaulted. A procedural default, as noted, occurs when a petitioner has already pursued his state-court remedies, but in doing so failed to fully and fairly present the claim now raised in the federal habeas petition to the state courts, and "it is clear that those courts would now hold the claim procedurally barred." *Perruquet*, 390 F.3d at 514. The court thus looks to Illinois law to determine whether the Illinois courts would now entertain

---

[5] The court is further unaware of any authority suggesting that due process is implicated whenever a non-Spanish-speaking attorney represents a criminal defendant who speaks only Spanish. Indeed, courts have found "'no unqualified constitutional right to counsel able to speak [a criminal] defendant's native tongue.'" *United States v. Cervantes*, No. 96 C 6523, 1998 WL 719932, at *5 (N.D. Ill. July 7,1998) (citing *United States ex rel. Torres v. Brierton*, 460 F. Supp. 704, 705 (N.D. Ill. 1978)).

Petitioner's claims.  *See Engle v. Isaac*, 456 U.S. 107, 125 & n.28 (1982) (looking to Ohio law that provided limited collateral review and finding petitioner's claims procedurally defaulted).  If not, the claims are defaulted, and the court cannot consider their merits absent a showing of cause and prejudice.  *See Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir. 1995).

### 1. Illinois Courts Would Likely Not Entertain the Claims

Citing *Smith v. Walls*, 276 F.3d 340 (7th Cir. 2002), Petitioner contends that Illinois law allows him to file a successive petition for post-conviction relief without first obtaining leave of court, and that there thus is no procedural default here because he remains free to present the unexhausted claims to the state courts.  (Reply, at 2.)  In *Walls*, the Seventh Circuit held that a successive petition under the IPCHA is "properly filed" for purposes of tolling the statute of limitations for a federal habeas claim; in doing so, the court indeed stated that the IPCHA does not require a state prisoner to obtain leave of court before filing a successive petition.  276 F.3d at 344.  Since *Walls*, however, the IPCHA has been amended to impose this very requirement.  *See* 725 ILCS 5/122-1(f) (as amended by Pub. A. 93-493 (effective Jan. 1, 2004)) ("Only one petition may be filed by a petitioner under this Article without leave of the court.")  Leave to file a successive petition "may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure."  (*Id.*)  Illinois courts have explained that the IPCHA thus "prohibits the filing of successive postconviction petitions," *People v. Leason*, 352 Ill. App. 3d 450, 453, 816 N.E.2d 747, 751 (1st Dist. 2004), but that a "narrow exception" to exists where "the proceedings on the initial petition were 'deficient in some fundamental way,'" which the petitioner can establish only by demonstrating both cause and prejudice with respect to each claim raised in the successive petition, *People v. McDonald*, 364 Ill. App. 3d 390, 393, 846 N.E.2d 960, 964 (3d Dist. 2006) (quoting *People v. Britt-El*, 206 Ill. 2d 331, 339, 794 N.E.2d 204, 209 (2002) (citation omitted)).  "Cause" requires the petitioner to identify an "objective factor, external to the defense, that impeded the [petitioner's] effort to raise the claim in

an earlier proceeding," *id.* (citation omitted), and "prejudice" requires the petitioner to demonstrate that the claim not raised during initial post-conviction proceedings "so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f).

Moreover, a separate IPCHA provision provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3. The disposition of an initial petition thus has *res judicata* effect with respect to all claims that were raised or could have been raised in that petition. *McDonald*, 364 Ill. App. 3d at 392-93, 846 N.E.2d at 963-64 (citing *People v. Flores*, 153 Ill. 2d 264, 274, 606 N.E.2d 1078, 1083 (1992)). A court in this district has concluded that where a federal habeas petitioner failed to present a claim to the Illinois courts on direct appeal and in a petition for post-conviction relief, the claim is procedurally defaulted because Illinois courts would consider the claim waived in any successive petition. *Beachem v. Williams*, 351 F. Supp. 2d 793, 811 (N.D. Ill. 2004) (Filip, J.); *see also People v. Jones*, 191 Ill. 2d 194, 198, 730 N.E.2d 26, 29 (2000) (noting, even before the IPCHA was amended to require a petitioner to obtain leave of court, that "a defendant faces a daunting procedural hurdle when bringing a successive post-conviction petition" as a consequence of the rules of waiver and *res judicata*).

As noted, Petitioner's second claim—ineffective assistance of trial counsel for failing to adequately investigate his defense and call certain witnesses—was included in his amended petition for post-conviction relief; the trial court addressed that claim on the merits in dismissing the petition. Because that decision will have *res judicata* effect if Petitioner attempted to raise that claim in any successive petition for post-conviction relief, Illinois courts would not entertain the claim and it is thus procedurally defaulted here. The other three unexhausted claims, as noted, were not presented in Petitioner's post-conviction petition nor in his appeal of that petition's dismissal. Petitioner cannot file a successive petition for post-conviction relief in Illinois, raising those three claims, without obtaining leave to do so; and an Illinois court will not grant such leave unless

12

Petitioner can demonstrate, by showing cause and prejudice for failing to previously present those claims, that the initial post-conviction proceedings were deficient in some fundamental way. *See McDonald*, 364 Ill. App. 3d at 393, 846 N.E.2d at 964.

Petitioner contends that his first post-conviction proceedings were "fundamentally deficient" because his post-conviction attorney—presumably Quilty, whom the trial court appointed after Petitioner filed a *pro se* post-conviction petition—did not read or write Spanish, and Petitioner cannot read or write English. (Reply, at 2-3.) This court can find no Illinois decision suggesting that this is sufficient to constitute "cause" for failure to raise a claim in an earlier post-conviction proceeding. *Cf. People v. Harris*, 224 Ill. 2d 115, 134-35, 862 N.E.2d 960, 972 (2007) (petitioner would have "cause" for failing to raise claim of ineffective assistance of appellate counsel where IPCHA statute of limitations would require petitioner to file first post-conviction petition before counsel had even filed brief in direct appeal). Indeed, to the extent Petitioner's argument implies that the post-conviction proceedings were deficient because Quilty was ineffective, that argument necessarily fails because Petitioner did not even have a right to counsel in that proceeding. *See Coleman*, 501 U.S. at 752 (citations omitted) ("There is no constitutional right to an attorney in state post-conviction proceedings.") Moreover, courts have consistently held that unfamiliarity with English does not constitute "cause" for a procedural default. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) ("Bonilla's unfamiliarity with the English language is insufficient to establish cause to excuse his procedural default because such alleged unfamiliarity is not 'external to [his] defense.'") (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (8th Cir. 1988), *cert. denied*, 490 U.S. 1100 (1989) (*pro se* status and unfamiliarity with English language and United States court system do not establish cause); *see also Henderson v. Cohn*, 919 F.2d 1270, 1272-73 (7th Cir. 1990) (illiteracy insufficient to constitute cause for procedural default). Finally, the court notes that Petitioner's initial *pro se* post-conviction petition did not include a claim that trial counsel was ineffective for failing to call witnesses who would have

13

testified that Petitioner was afraid of the victim; that claim was added after the trial court appointed Quilty. This addition suggests that Quilty was able to communicate with Petitioner.

The court concludes that if Petitioner attempted to present his claims to the Illinois courts in a successive petition for post-conviction relief under the IPCHA, those courts would likely deny leave to file such a petition because Petitioner cannot demonstrate cause for failing to raise the claims in his initial attempt to seek post-conviction relief, and because Illinois courts would further consider those claims barred on the basis of waiver and/or *res judicata*. Petitioner's first four claims are thus procedurally defaulted. *See Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001) (federal habeas claim procedurally barred where petitioner failed to present it on direct appeal or in state habeas petition, and state law prohibited second habeas petition absent showing of cause for failing to raise grounds that could have been raised in the first petition); *Mitchell v. Hanks*, No. 2:03-CV-296-JDT-WTL, 2005 WL 2100067, at *1 (S.D. Ind. July 26, 2005) (petitioner's assertion that he would return to Indiana courts to seek leave to file successive petition for post-conviction relief was "not an established means by which [the petitioner] could overcome the consequences of his procedural default").

### 2. Petitioner Shows No Cause for the Procedural Default

Petitioner argues that cause exists to excuse any procedural default because of unspecified "ineffective assistance of counsel issues." (Reply, at 3.) Petitioner recognizes that this type of claim must be presented as an independent claim to the Illinois courts before this court can consider whether it indeed constitutes cause. (*Id.* at 2.) *See Lemons*, 54 F.3d at 360 ("Before a state prisoner can use ineffective assistance of counsel as cause for a procedural default, he must first present this claim as an independent claim to the state courts either on direct appeal or in post-conviction proceedings.") As explained above, however, his only avenue for doing so is to seek leave to file a successive petition for post-conviction relief, which an Illinois court is unlikely to grant. That claim is thus procedurally defaulted as well. And to the extent that Petitioner relies

14

on his unfamiliarity with the English language to establish cause, any such argument fails, as noted above. *See Bonilla*, 370 F.3d at 498. As the court can ascertain no other possible grounds that constitute cause for Petitioner's procedural default, his first four claims must be dismissed with prejudice.

        **C.**        **A Stay of Federal Habeas Proceedings is Not Appropriate**

Even if Petitioner were correct that he has avoided procedural default because it is still possible—however unlikely—for him to present his unexhausted claims to the Illinois courts in a successive petition for post-conviction relief, Petitioner provides no reason for this court to hold his federal habeas petition in abeyance while he attempts to do so. As discussed below, Petitioner's *Apprendi* claim has been exhausted. When faced with such a "mixed petition" containing both exhausted and unexhausted claims, a federal district court has discretion to stay the petition to allow the petitioner to exhaust his claims in state court and then return to federal court with a fully exhausted petition. *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005); *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006). A court should exercise this discretion "only in limited circumstances," however, where the petitioner shows good cause for his failure to exhaust the claims in state court; moreover, even where good cause exists, a court will abuse its discretion in granting a stay if the petitioner's claims are "plainly meritless." *Rhines*, 544 U.S. at 277.

Petitioner fails to persuade the court that stay-and-abeyance is appropriate here. Petitioner had two opportunities to present his claims concerning his non-Spanish-speaking attorney, the allegedly inadequate interpreter, and his inability to comprehend English, to the Illinois courts. He was represented by counsel on direct appeal and in his post-conviction proceedings; in the latter, the trial court twice allowed him to amend his post-conviction petition to add additional claims, and afforded Petitioner a hearing, where he raised yet another claim. Moreover, although Petitioner maintains that he can still raise these claims in a successive petition for post-conviction relief, he fails to explain why he has not already done so. In these circumstances, the court sees no reason

15

to hold the habeas petition in abeyance while Petitioner returns for a third time to the Illinois courts, especially where those courts, as explained above, are unlikely to allow Petitioner to do so. *See Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (where it is "obvious that the unexhausted claim would be procedurally barred in state court," court "will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review").

## II. The *Apprendi* Claim

In his *Apprendi* claim, Petitioner contends that he was denied his rights to due process and equal protection under the law because the trial judge improperly imposed an 80-year extended sentence without a jury finding that the murder was brutal and heinous beyond a reasonable doubt. Petitioner has exhausted this claim: Quilty presented it in the "Addendum" to the amended post-conviction petition, apparently at Petitioner's insistence; Petitioner appealed the trial court's dismissal of the claim to the Illinois Appellate Court; and Petitioner included the claim in his subsequent PLA. Both the trial court and the Illinois Appellate Court found that *Apprendi* did not apply retroactively to cases in which direct review had concluded before that decision was issued. Respondent contends that the principles of non-retroactivity set forth by the Supreme Court in *Teague* preclude this court from reaching the merits of Petitioner's claim, and the court agrees.

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The decision was issued on June 26, 2000, however, well after Petitioner's conviction and sentence became final; that finality occurred upon conclusion of direct review, when the Illinois Supreme Court on December 2, 1998 denied Petitioner's PLA and the time for filing a petition for certiorari with the United States Supreme Court had passed. In *Teague*, the Supreme Court held that barring application of an exception for rules governing substantive conduct and for "watershed" rules, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before

16

the new rules are announced." 489 U.S. at 310. The Seventh Circuit has concluded that *Apprendi* does not fall within an exception and therefore should not be applied retroactively on collateral review. *See Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002) ("*Apprendi* . . . does not disturb sentences that became final before June 26, 2000, the date of its release."). The court thus declines to address the merits of Petitioner's *Apprendi* claim. *See Dellinger v. Bowen*, 301 F.3d 758, 765 (7th Cir. 2002) (rejecting petition for habeas relief based on *Apprendi* where petitioner's sentence became final before *Apprendi*'s effective date).

## **CONCLUSION**

For the foregoing reasons, the petition for habeas corpus is denied.

ENTER:

Dated:    August 1, 2007              _____
                                      REBECCA R. PALLMEYER
                                      United States District Judge